RECEIVED IN
DOCKET RECORDS &
USER FEE BRANCH

FILED
U.S. TAX COURT

Jeff Moffatt, Esq.
Tax Bar MJ2204
43625 N Sierra Hwy, Suite A
Lancaster, CA 93534
Telephone: (661) 945-6121
Facsimile: (661) 9404916
Email: Jeffreymbajd@hotmail.com

Attorney for Petitioner

**17709-06**

UNITED STATES TAX COURT

| ROBERT AND VIENNA LESHIN, | Case No.: |
|---|---|
| **PETITIONERS**<br>- Vs. -<br>COMMISSIONER OF INTERNAL REVENUE,<br><br>**RESPONDENT.** | PETITION<br><br>Trial Calendar:  REQUESTING Los Angeles, California<br>Date: TO BE ISSUED BY COURT |

**Address Used By Court**

1. Petitioner's legal names are ROBERT AND VIENNA LESHIN. They live at 9644 East Ave. S-12, Littlerock, CA 93534. 15004 East Ave O, Palmdale CA 93591.

2. The date of the Commissioners determination is 8/16/06,  and the address of the issuing IRS office is 330 North Brand Blvd, Suite 600 Glendale, CA.  A copy of the notice is enclosed

3. The tax year at issue is 2001, with balances off from 00,01,02,03 with a CDP hearing total of 178,232.

4. The Deficiency is claimed to be $178,232.

5. Penalties under 6662(a)(1) $not broken down on notice of determination. Penalties under IRC 6654 were also not broken down on the notice of determination.

6. Statement of Errors.



EXHIBIT

17

SERVED Sep 11 2006

A. Petitioner is being denied collection alternatives.
    1. Respondent has been unreasonable in accepting alternatives.

B. Petitioners complied with a demand for multiple prior returns.
C. Respondent violated RRA 98, when unlawful levies removed from Petitioner's
    relatives accounts, those relatives entire savings.

D. Respondent was advised of the error they had made by Petitioner's counsel, yet
failed to correct the error the day Respondent was notified of the error.

E. Respondent in glossing Petitioner's issues in the Summary and Recommendation
which caused Petitioners families original inability to comply, Respondent that this
satisfies Respondent's ability to be neutral and independent when nothing could be
farther from the truth.

F. Respondent has a habit and practice of satisfying true independence in CDP
hearings.

G. Petitioner believes, and plans to show through subpoenas that Respondent handles
Individual CDP hearings, with a different level of criteria than exist for innocent
spouse CDP hearings.

H. Petitioner believes, and plans to show through subpoenas that Respondent handles
Individual CDP hearings, with a different level of criteria than exist for innocent
spouse CDP hearings.

I. Independent research, later described in this document shows a disparity regarding
De Novo review being allowed for Corporate CDP cases, while De Novo Review is
typically not being allowed at Individual CDP hearings, which is an error.

J. Respondent violated the spirit and letter of the law, under Ewing v. Comm'r, [2004]
Stand. Fed. Tax Rep. (CCH) 4289, 4292 (Jan. 28, 2004) (to be published at 122 T.C.
32 (2004)). "Code section 6015(e)(1)(A), which authorizes the court to determine the
appropriate relief available under Code section 6015, is similar to the court's
deficiency jurisdiction in section 6213, which provides that taxpayers who receive a
notice of deficiency may petition the Tax Court for a redetermination of the
deficiency, implying de novo review. I.R.C. § 6213(a) (2000). The court went on to
observe that "it is well established that the APA does not apply to deficiency cases in
this Court." . (citing O'Dwyer v. Comm'r, 266 F.2d 575, 580 (4th Cir. 1959) (holding
that 5 U.S.C. section 554(a)(1) does not apply to deficiency determinations in the Tax
Court because in those cases, the court is not reviewing a record of a formal
proceeding; there is no hearing transcript, witness testimony, or exhibits introduced

2

Ex. 17 pg. 2

by the parties), aff'g 28 T.C. 698 (1957), and Nappi v. Comm'r, 58 T.C. 282, 284 (1972)."

K. Respondent has failed to properly implement , IRC §7122(c)(2)(B)  which now provides that, in applying its standards, the IRS "shall determine, on the basis of the facts and circumstances of each taxpayer, whether the use of the schedules... is appropriate and shall not use the schedules to the extent such use would result in the taxpayer not having adequate means to provide for basic living expenses." IRC §7122(c)

L. Petitioner has the right to seek judicial review of the IRS's determination in due process proceedings. I.R.C. § 6330(d).

M. Petitioner has the right to  extend to the merits of the underlying tax liability, if the taxpayer has not previously received the opportunity for review of the merits, e.g., did not receive a notice of deficiency. I.R.C. § 6330(c)(2)(B). Petitioner has no knowledge of being given a prior deficiency notice on tax year 1995.

N. . Sec. 6330(c)(2)(B), I.R.C., permits Petitioners  to challenge the existence or amount of the tax liability reported on their original tax return because Petitioners have not received a notice of deficiency and have not otherwise had an opportunity to dispute

the tax liability in question. MONTGOMERY, v. COMMISSIONER122 T.C. 1; 2004 U.S. Tax Ct. LEXIS 1; 122 T.C. No. 1

O. Respondent has a pattern and practice of failing to recognize the new CDP rights given to taxpayers such as Petitioner through the Service Restructuring and Reform Act of 1998, Pub. L. 105-206, § 3401, 112 Stat. 685, 746,  where Congress enacted new sections 6320 (pertaining to liens) and 6330 (pertaining to levies) establishing collection due process rights for taxpayers, effective for collection actions after January 19, 1999.

P. Given that Respondent is being forced by Federal Court Actions to return this illegal and unauthorized collection of Federal Excise taxes, the outstanding deficiency balance is known to be incorrect by Respondent at the date of the mailing of the 30 day letter.

QThis knowingly sending out of an incorrect deficiency balance, on the date it was sent out invalidates the deficiency document itself.

[ 3 ]

R. Since the deficiency balance is known to be in error, this is a "new matter" and, pursuant to Tax Court Rule 142, the burden of proof shifts to the government with respect to any "new matters." Shea v. Commissioner

S. Charles Grassley, on 4/20/06 stated in the Congressional Report GAO 06-525, IRS Offers In Compromise, advising the average accepted OIC was 16%.
T. Section 7122 of the Internal Revenue Code Authorizes the Secretary of the Treasury to compromise tax delinquencies.

U. Rather than attempting to compromise offers as directed by Congress, Respondent was found to outright reject 75% of original offers, while also decreasing the staffing for offer reviews.

V. Treasury regulations provide that respondent must offer the taxpayer an opportunity for a face-to-face administrative hearing at the Appeals Office closest to the taxpayer's residence. Sec. 301.6330-1(d)(2), Q&A-D7, Preced. & Admin Regs. No such face to face meeting was offered, or took place, as such an error exists.

W. Regarding Respondent's abuse of discretion as to Petitioner ,
SOCIAL SCIENCE EXPLANATIONS FOR DISPARATE
OUTCOMES IN TAX COURT ABUSE OF DISCRETION CASES: A
TAX JUSTICE PERSPECTIVE CHARLES A. BOREK Capital
University Law Review, Spring, 2005 33 Cap. U.L. Rev. 623 stated an
inequity exists in CDP cases, which is articulated via the quoted
materials. This same inequity is what Petitioner faced in his families
CDP hearing.
a.        "[d]eference cannot, however, equate to an absolute yielding
to the prior judgment, as this would render the concept of deferential
review oxymoronic. Rather, deferential review is commonly denoted by
the term "abuse of discretion," which in turn is articulated in a variety of
ways by the federal judiciary. n50"
b.        The Abuse of Discretion Standard in Cases Involving
Corporate Taxpayers

1. Code Section 446 Cases

a. "The court's resort to legislative history, analogy to non-tax areas of law, and detailed analysis of the taxpayer's business practices is more consistent with a de novo standard of review n68 than with a deferential standard, as Judge Gerber pointed in dissent. n69"

b. "The Service determined that deposits made by residents to a continuing care retirement community should be characterized as advance payments for services. n83 The Tax Court again declined to defer to the Service's judgment,

4

preferring instead to base its decision on the court's independent review and evaluation of the facts. n84 In Hamilton Industries, Inc. v. Commissioner, n85 the Service determined that a corporate taxpayer's method of accounting for its inventory, under the dollar value LIFO method, did not result in a clear reflection of income because inventory purchased in two corporate acquisitions should not have been included in the same pool or item categories as inventory manufactured after the acquisition. n86 The Tax Court decided that because its evaluation of the corporate taxpayer's accounting treatment was favorable, the Service should be found to have abused its discretion by requiring a change in accounting method. n87"

c. "It appears that the Tax Court's departure from deference is not confined to situations involving primarily findings of fact, nor to technical applications of accounting and regulatory principles. n101 While there have been many cases where the court has [*649] agreed with the Service's determination under its authority contained in Code section 446, even in those cases the court generally engages in a detailed analysis n102 and does not simply defer to the administrative agency, [*650] as one might expect from the legislature's seemingly sweeping delegation of authority. n103"

2. Code Section 482 Cases

a." In contrast to the accounting provisions of Code section 446, Code section 482 empowers the Service to allocate income, deductions, and credits between two or more controlled entities when necessary to prevent tax evasion or to clearly reflect income."

b." By the 1980's, however, a discernable trend in the opposite direction had developed. n108 [*653] The situation had gotten so troubling that Congress felt compelled to accuse the federal courts, in general, of in not applying the abuse of discretion standard in these cases, but instead applying a standard of judicial review that gave "little deference to the Commissioner and permitted the court[s] to effectively substitute its own judgment for that of the Commissioner.'"

c. Judge Tannenwald's opinion, "thus, in the final analysis, the Court is left to its own devices without the usual anchor of decision, namely that, if the taxpayer fails to carry its burden of proof, the deficiency is sustained. The Court must find a formula, without the benefit of sufficient help from the parties as to what that formula might be. In a section 482 case, this task usually requires the Court to find a middle ground. . . . n130"

3. Other Tax Court Abuse of Discretion Cases Involving Corporate Taxpayers

a.      "Code section 845 gives the Secretary discretion to allocate, recharacterize, or adjust the reported income of a party to a reinsurance agreement when it is determined that the reinsurance contract results in an improper reflection of taxable income."

5

b. "Judge Laro n153 observed that this case involved "the complex and esoteric world of insurance law" n154 and that the task of the court was merely to determine if the Service had abused its discretion in finding a significant tax avoidance effect under the facts presented. n155 In doing so the court felt compelled to examine "volumes of filings, reams of trial testimony, boxes of exhibits, and assorted expert reports." n156"

4. Tax Court Review of Innocent Spouse "Equitable Relief" Determinations "Spouses are allowed to file a single, joint tax return, combining the income, deductions, and reportable items of both individuals."

a. "Congress modified and [*680] liberalized innocent spouse relief as part of the Service Restructuring and Reform Act of 1998. n254"

b. "With respect to equitable relief now available under Code section 6015(f), n259 the abuse of discretion standard applies. n260"

c. "When reviewing the equitable relief cases applying the abuse of discretion standard that has been decided by the Tax Court since the enactment of the new provisions, a striking contrast to the collection cases can be gleaned. While there have been some equitable relief cases in which the court summarily defers to the Service, n261 those cases have [*682] proven to be the exception rather than the rule. n262 In the vast majority of cases, the court carefully weighs the facts to determine whether the Service abused its discretion in denying relief. n263 What may account for this distinction is the existence of a set of discrete factors that the Service uses in making its determinations in the equitable relief cases. n264 This list of [*683] factors has given the court a basis for a more detailed, albeit still deferential, review of the Service's evaluation of the facts. n265"

d. "Even when an equitable relief case is founded on economic hardship and thus the analysis required is similar to that in the collection cases, the Tax Court seems more inclined to independently review the facts rather than simply defer to the Service. n267"

5. The Abuse of Discretion Standard in Cases Involving Individual Taxpayers

a. . Tax Court Review of Collections Cases

"If the taxpayer fails to meet the Commissioner's demand for payment of her tax liability, all property and rights to property of a taxpayer become subject to a lien in favor of the United States on the date a tax liability is assessed against the taxpayer."

b.    "The Tax Court's approach to these types of abuse of discretion cases seem diametrically opposed to the court's attitude regarding abuse of discretion in corporate taxpayer cases, as described above. Since the enactment of Code section 6330 in 1998, there have been approximately 200 cases decided by the Tax Court

6

in which the court reviewed the Service's CDP determination on the basis of abuse of discretion."

c.    "However, even when there is no serious defect in the taxpayer's argument and the Service acts without substantial justification, the Tax Court has expressed a reluctance to label the Service's position an abuse of discretion. "

d.    "Given this judicial attitude, it is hardly astonishing that only three CDP cases have been decided in favor of the taxpayer, n197 although nearly 200 [*671] CDP cases have been heard by the Tax Court since 2000."

e.    "Particularly illuminating are the cases in which the taxpayer submits an offer in compromise, based on doubt as to collectibility, as a collection alternative in the context of a CDP hearing. The Tax Court has time and again indicated that it has no interest in thoughtfully reviewing the basis of the Service's denial of such offers. n201"

f.    "The existence of a genuine factual dispute regarding the calculation of income and expenses has not dissuaded the court from granting great deference to the Service's position in CDP hearings. n210"

g.    "n211 Despite the fact that the taxpayer asserted that the Appeals officer had relied on erroneous calculations by the revenue officer with respect to petitioner's monthly income, the court, without a substantive discussion of the merits of the taxpayer's allegations, stated that it could find no abuse of discretion. n212 The implication is that any articulated reason for rejection of an offer will be sufficient to avoid an abuse of discretion challenge. n213 If this is the case, the deferential standard is completely disemboweled and the notion that the taxpayer is entitled to judicial review under Code section 6330 is rendered meaningless."

h.    "Greater judicial deference with respect to one category of taxpayer as opposed to others may simply be a method of maintaining both established superiority and social equilibrium. A constant level of deference would indicate an equality of social status, which may in fact be contrary to reality. As Judge Nims pointed out, there are significant economic considerations at play when a corporate taxpayer is before the court in an abuse of discretion case. n391 At the same time, the concept of noblesse oblige may account for the fact that greater deference is given to the Service in individual collections than in innocent spouse cases arising under Code section 6015(f)."

X. The primary issue, then, is whether abuse of discretion standard has one definition for an individual's under a CDP hearing and another more favorable definition when used for innocent spouse.

Y. The secondary issue, then, is whether abuse of discretion standard has one definition for an individual's under a CDP hearing and another more favorable definition when used for corporate tax cases under Code sections 845, 482, and 446 Cases.

Z. In Ewing, [2004] Stand. Fed. Tax Rep. (CCH) at 429 "The court then focused on the word "determine" as it appears in Code section 6015. n547 The court noted that

since 1924, the Tax Court (and the predecessor Board of Tax Appeal(s), has had jurisdiction to "redetermine" deficiencies and additions to tax; since 1926, it been able to "determine" overpayments. n548 Thus, the court and its predecessors have "redetermined" deficiencies de novo, not limited to the administrative record, for more than 75 years. n549 The court went on to say, In many of these cases, the taxpayer is proposing a collection alternative, most commonly an offer in compromise. n561 The purpose of an offer in compromise is to give taxpayers a "fresh start," much like the underlying concept of bankruptcy. n562 Thus, new information regarding the financial circumstances of the taxpayer would be of particular relevance in these matters."

7. Statement of Facts.

A. Petitioners filed a return.

B. Petitioners have received Respondent's statement arguing Petitioner has in excess of $1,000,000.00 available to pay off their alleged obligation. This calculation is in error.

C. The calculation includes the following errors.

    1.    The equity Respondent argued existed in my Petitioner's home is in error.

    2.    In dealing with the service, Respondent uses a data system that is delayed by 3 to 9 months. This delay is significant when the market prices for homes are falling.

    3.    The housing market currently in a slump in the Antelope Valley is projected to further decline at or near 30% in the near future.

    4.    Petitioner indicates they are unable to borrow any alleged equity from their house and have submitted documentation attesting to the fact.

    5.    Any alleged equity in trust accounts is misplaced since Petitioner has no ability to gain income until it is distributed.

    6.    Traditionally money that is tied up in vehicles such as trusts and limited liability corporations is given substantial discounts. No such discounts were given here, rather the total amount of the trust was attributed to Petitioner. This lack of discounting the value of non reachable money is in error.

    7.    Petitioner argues that any payment of 50% of the outstanding debt is better than the IRS can collect, given the new outsourcing of collection efforts.

    8.    Charles Grassley, on 4/20/06 stated in the Congressional Report GAO 06-525, IRS Offers In Compromise, advising the average accepted OIC was 16%.

    9.    Respondent stated that any payment above 50%, although it may be economically beneficial to accept, was not a stated reason to accept OIC's, which Petitioner believes is in error.

    10.    Section 7122 of the Internal Revenue Code authorizes the Secretary of the Treasury to compromise tax delinquencies. This opportunity has been denied Petitioner because of the internal policies of Respondent designed to reduce the number of accepted compromised tax delinquencies.

    11.    Treasury regulations provide that respondent must offer the taxpayer an opportunity for a face-to-face administrative hearing at the Appeals Office closest

8

to the taxpayer's residence. Sec. 301.6330-1(d)(2), Q&A-D7, Preced. & Admin Regs.

D. Respondent has a pattern and practice of failing to satisfy the Congressional dictates of a CDP hearing.

E. Petitioner will show that in Respondent's Appeals representatives in CDP cases overwhelmingly find against Individual taxpayers.

F. By Respondent overwhelmingly finding against individual taxpayers in CDP cases, this sets forth the basis to argue that Respondent's appeal representatives are not in fact truly independent from Respondent.

G. Petitioner will also show that Respondent fails to apply the same standards for Individuals, such as Petitioner in CDP cases, as it does for Individuals in Innocent Spouse CDP cases.

H. Petitioner will also show that Respondent fails to apply the same standards for Individuals, such as Petitioner in CDP cases, as it does for Corporations in Code 446 cases.

I. Petitioner will also show that Respondent fails to apply the same standards for Individuals, such as Petitioner in CDP cases, as it does for Corporations in Code 482 cases.

J. Petitioner will also show that Respondent fails to apply the same standards for Individuals, such as Petitioner in CDP cases, as it does for Corporations in Code 845 cases.

K. Petitioner Prays for relief from the failure to recognize the 9th Circuit rules, allowing for an incorrect Deficiency Determination against Petitioners Regarding abuse of discretion, SOCIAL SCIENCE EXPLANATIONS FOR DISPARATE OUTCOMES IN TAX COURT ABUSE OF DISCRETION CASES: A TAX JUSTICE PERSPECTIVE CHARLES A. BOREK Capital University LawReview, Spring, 2005 33 Cap. U.L. Rev. 623 stated in inequity exists in CDP cases, which is articulated via the quoted materials.

"[d]eference cannot, however, equate to an absolute yielding to the prior judgment, as this would render the concept of deferential review oxymoronic. Rather, deferential review is commonly denoted by the term "abuse of discretion," which in turn is articulated in a variety of ways by the federal judiciary. n50"

L. The Abuse of Discretion Standard in Cases Involving Corporate Taxpayers

1. Code Section 446 Cases

a. "The court's resort to legislative history, analogy to non-tax areas of law, and detailed analysis of the taxpayer's business practices is more consistent with a de novo standard of review n68 than with a deferential standard, as Judge Gerber pointed in dissent. n69"

b. "The Service determined that deposits made by residents to a continuing care retirement community should be characterized as advance payments for services. n83 The Tax Court again declined to defer to the Service's judgment,

9

preferring instead to base its decision on the court's independent review and evaluation of the facts. n84 In Hamilton Industries, Inc. v. Commissioner, n85 the Service determined that a corporate taxpayer's method of accounting for its inventory, under the dollar value LIFO method, did not result in a clear reflection of income because inventory purchased in two corporate acquisitions should not have been included in the same pool or item categories as inventory manufactured after the acquisition. n86 The Tax Court decided that because its evaluation of the corporate taxpayer's accounting treatment was favorable, the Service should be found to have abused its discretion by requiring a change in accounting method. n87"

     c. "It appears that the Tax Court's departure from deference is not confined to situations involving primarily findings of fact, nor to technical applications of accounting and regulatory principles. n101 While there have been many cases where the court has [*649] agreed with the Service's determination under its authority contained in Code section 446, even in those cases the court generally engages in a detailed analysis n102 and does not simply defer to the administrative agency, [*650] as one might expect from the legislature's seemingly sweeping delegation of authority. n103"

2. Code Section 482 Cases

     a." In contrast to the accounting provisions of Code section 446, Code section 482 empowers the Service to allocate income, deductions, and credits between two or more controlled entities when necessary to prevent tax evasion or to clearly reflect income."

     b." By the 1980's, however, a discernable trend in the opposite direction had developed. n108 [*653] The situation had gotten so troubling that Congress felt compelled to accuse the federal courts, in general, of in not applying the abuse of discretion standard in these cases, but instead applying a standard of judicial review that gave "little deference to the Commissioner and permitted the court[s] to effectively substitute its own judgment for that of the Commissioner.'"

     c. Judge Tannenwald's opinion, "thus, in the final analysis, the Court is left to its own devices without the usual anchor of decision, namely that, if the taxpayer fails to carry its burden of proof, the deficiency is sustained. The Court must find a formula, without the benefit of sufficient help from the parties as to what that formula might be. In a section 482 case, this task usually requires the Court to find a middle ground. . . . n130"

3. Other Tax Court Abuse of Discretion Cases Involving Corporate Taxpayers

     a.    "Code section 845 gives the Secretary discretion to allocate, recharacterize, or adjust the reported income of a party to a reinsurance agreement when it is determined that the reinsurance contract results in an improper reflection of taxable income."

10

b. "Judge Laro n153 observed that this case involved "the complex and esoteric world of insurance law" n154 and that the task of the court was merely to determine if the Service had abused its discretion in finding a significant tax avoidance effect under the facts presented. n155 In doing so the court felt compelled to examine "volumes of filings, reams of trial testimony, boxes of exhibits, and assorted expert reports." n156"

4. Tax Court Review of Innocent Spouse "Equitable Relief" Determinations
"Spouses are allowed to file a single, joint tax return, combining the income, deductions, and reportable items of both individuals."

a. "Congress modified and [*680] liberalized innocent spouse relief as part of the Service Restructuring and Reform Act of 1998. n254"

b. "With respect to equitable relief now available under Code section 6015(f), n259 the abuse of discretion standard applies. n260"

c. "When reviewing the equitable relief cases applying the abuse of discretion standard that has been decided by the Tax Court since the enactment of the new provisions, a striking contrast to the collection cases can be gleaned. While there have been some equitable relief cases in which the court summarily defers to the Service, n261 those cases have [*682] proven to be the exception rather than the rule. n262 In the vast majority of cases, the court carefully weighs the facts to determine whether the Service abused its discretion in denying relief. n263 What may account for this distinction is the existence of a set of discrete factors that the Service uses in making its determinations in the equitable relief cases. n264 This list of [*683] factors has given the court a basis for a more detailed, albeit still deferential, review of the Service's evaluation of the facts. n265"

d. "Even when an equitable relief case is founded on economic hardship and thus the analysis required is similar to that in the collection cases, the Tax Court seems more inclined to independently review the facts rather than simply defer to the Service. n267"

5. The Abuse of Discretion Standard in Cases Involving Individual Taxpayers

a. . Tax Court Review of Collections Cases

"If the taxpayer fails to meet the Commissioner's demand for payment of her tax liability, all property and rights to property of a taxpayer become subject to a lien in favor of the United States on the date a tax liability is assessed against the taxpayer."

b. "The Tax Court's approach to these types of abuse of discretion cases seem diametrically opposed to the court's attitude regarding abuse of discretion in corporate taxpayer cases, as described above. Since the enactment of Code section 6330 in 1998, there have been approximately 200 cases decided by the Tax Court

11

in which the court reviewed the Service's CDP determination on the basis of abuse of discretion."

c, "However, even when there is no serious defect in the taxpayer's argument and the Service acts without substantial justification, the Tax Court has expressed a reluctance to label the Service's position an abuse of discretion. "

d. "Given this judicial attitude, it is hardly astonishing that only three CDP cases have been decided in favor of the taxpayer, n197 although nearly 200 [*671] CDP cases have been heard by the Tax Court since 2000."

e. "Particularly illuminating are the cases in which the taxpayer submits an offer in compromise, based on doubt as to collectibility, as a collection alternative in the context of a CDP hearing. The Tax Court has time and again indicated that it has no interest in thoughtfully reviewing the basis of the Service's denial of such offers. n201"

f.  "The existence of a genuine factual dispute regarding the calculation of income and expenses has not dissuaded the court from granting great deference to the Service's position in CDP hearings. n210"

g. "n211 Despite the fact that the taxpayer asserted that the Appeals officer had relied on erroneous calculations by the revenue officer with respect to petitioner's monthly income, the court, without a substantive discussion of the merits of the taxpayer's allegations, stated that it could find no abuse of discretion. n212 The implication is that any articulated reason for rejection of an offer will be sufficient to avoid an abuse of discretion challenge. n213 If this is the case, the deferential standard is completely disemboweled and the notion that the taxpayer is entitled to judicial review under Code section 6330 is rendered meaningless."

h. "Greater judicial deference with respect to one category of taxpayer as opposed to others may simply be a method of maintaining both established superiority and social equilibrium. A constant level of deference would indicate an equality of social status, which may in fact be contrary to reality. As Judge Nims pointed out, there are significant economic considerations at play when a corporate taxpayer is before the court in an abuse of discretion case. n391 At the same time, the concept of noblesse oblige may account for the fact that greater deference is given to the Service in individual collections than in innocent spouse cases arising under Code section 6015(f)."

M. The primary issue, then, is whether abuse of discretion standard has one definition for an individual's under a CDP hearing and another more favorable definition when used for innocent spouse.

N. The secondary issue, then, is whether abuse of discretion standard has one definition for an individual's under a CDP hearing and another more favorable

12

definition when used for corporate tax cases under Code sections 845, 482, and 446 Cases.

O. In Ewing, [2004] Stand. Fed. Tax Rep. (CCH) at 429 "The court then focused on the word "determine" as it appears in Code section 6015. n547 The court noted that since 1924, the Tax Court (and the predecessor Board of Tax Appeal(s), has had jurisdiction to "redetermine" deficiencies and additions to tax; since 1926, it been able to "determine" overpayments. n548 Thus, the court and its predecessors have "redetermined" deficiencies de novo, not limited to the administrative record, for more than 75 years. n549 The court went on to say, In many of these cases, the taxpayer is proposing a collection alternative, most commonly an offer in compromise. n561 The purpose of an offer in compromise is to give taxpayers a "fresh start," much like the underlying concept of bankruptcy. n562 Thus, new information regarding the financial circumstances of the taxpayer would be of particular relevance in these matters."

9. Petitioner Prays for relief from the failure to recognize the 9th Circuit rules, allowing for an incorrect Deficiency Determination. Petitioner also Prays that any and all penalties and Interest associated with the incorrect Deficiency Determination be removed. Petitioner further prays for relief such that the IRS because of the incorrect determination covers the costs of litigation, such as filing fees, Mileage, Postage and Attorney Costs.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on August 28, 2005 in Palmdale, California.

**ADMITTED**

By: Jeff Moffatt, Attorney for Petitioner
Jeff Moffatt, Esq.
Tax Bar MJ2204
43625 N Sierra Hwy, Suite A
Lancaster, CA 93534
Telephone: (661) 945-6121
Facsimile: (661) 9404916
Email: Jeffreymbajd@hotmail.com

13

**Internal Revenue Service**
Appeals Office
330 North Brand Blvd.
Suite 600
GLENDALE, CA 91203

Date: AUG 1 6 2006

JEFFREY D MOFFATT
43625 N SIERRA HWY, SUITE A
LANCASTER CA 93534

**Department of the Treasury**

**Person to Contact:**
  Laura Lisanti
  Employee ID Number: 95-02179
  Tel:  818.242.7703 Ext. 3029
  Fax:  818.242.8337
  Contact Hours: 9:00AM - 5:00PM
**Refer Reply to:**
  AP:FW:GLE:LL
**In Re:**
  Robert & Vienna R Leshin
  ███████ ber:
  ███████

  Period(s) Ended:
  12/2001

Dear Mr. Moffatt:

We are sending you the enclosed material under the provisions of your power of attorney or other authorization on file with us.

If you have any questions, please contact the person whose name and telephone number are shown above.

Sincerely,

*Paula Mills*

Paula Mills
Appeals Team Manager

Internal Revenue Service
Appeals Office
330 North Brand Blvd.
Suite 600
GLENDALE, CA 91203

Date: AUG 1 6 2006


ROBERT & VIENNA R LESHIN
9644 E AVENUE S-12
LITTLEROCK CA 93543

Department of the Treasury

Person to Contact:
  Laura Lisanti
  Employee ID Number: 95-02179
  Tel:  818.242.7703 Ext. 3029
  Fax:  818.242.8337
Refer Reply to:
  AP:FW:GLE:LL
  SSN/EIN Number: ████████
Tax Type/Form Number:
  Income / Form 1040
In Re:
  Collection Due Process Hearing
  (Tax Court)
Tax Period(s) Ended:
  12/2001

Certified Mail     7004 1350 0005 6721 2926

## NOTICE OF DETERMINATION
### CONCERNING COLLECTION ACTION(S) UNDER SECTION 6320 and/or 6330

Dear Mr. & Mrs. Leshin:

We have reviewed the taken or proposed collection action for the period(s) shown above. This letter is your Notice of Determination, as required by law. A summary of our determination is stated below. The attached statement shows, in detail, the matters we considered at your Appeals hearing and our conclusions about them.

If you want to dispute this determination in court, you must file a petition with the United States Tax Court for a redetermination within 30 days from the date of this letter.

To get a petition form and the rules for filing a petition, write to: Clerk, United States Tax Court, 400 Second Street, NW, Washington, D.C. 20217, or access the Tax Court website at www.ustaxcourt.gov.

The Tax Court has a simplified procedure for an appeal under section 6330(d)(1)(A) of a determination in which the unpaid tax does not exceed $50,000. You also can get information about this procedure by writing to the Tax Court, or accessing the Tax Court website at www.ustaxcourt.gov.

The time limit for filing your petition is fixed by law. The courts cannot consider your case if you file late. If the court determines that you filed your petition with the wrong court, you will have 30 days after such determination to file with the correct court.

If you do not petition the court within the time frame provided by law, your case will be returned to the originating IRS office for action consistent with the determination summarized below and described on the attached page(s).



Ex. 17 pg. 15

If you have any questions, please contact the person whose name and telephone number are shown above.

**Summary of Determination**
The filing of the Notice of Federal Tax Lien is sustained by Appeals. Please see the attached for details of the Appeals' determination.

Sincerely,

Paula Mills
Appeals Team Manager

cc: Jeffrey D Moffatt

Ex. 17 pg. 16

| Type of Tax(es) | Tax Period(s) | Date of CDP    Notice | Date CDP Request Received or Mailed if received date is after the 30-day period. |
|---|---|---|---|
| Income | 2001/12 2000/12 2002/12 2003/12 | 12/16/2005(Lien) 12/13/2005(Levy) | 01/17/2006(Lien) 01/13/2006(Levy)EH |

The taxpayers requested a hearing under IRC §§ 6320 & 6330 to determine whether the lien and levy actions taken and proposed by Compliance are appropriate.

## RECOMMENDATION

The filing of the Notice of Federal Tax Lien (NFTL) was appropriate and is sustained by Appeals.

The proposed levy action is appropriate and is sustained by Appeals.

## BRIEF BACKGROUND

This case came to Appeals from a Field Compliance (Collection) group located in Van Nuys, California.

The taxpayers, Robert & Vienna Leshin owe delinquent income taxes for CDP/EH periods ending 12/31/2000, 12/31/2001, 12/31/2002 and 12/31/2003 in the amount of $178,232 as of 07/31/2006[1].

The assigned Revenue Officer (RO) issued Letter 1058, *Notice of Intent to Levy and Your Right to a Collection Due Process Hearing* and requested a Notice of Federal Tax Lien (NFTL) when the taxpayers failed to contact him after a field call.

The taxpayer's Power of Attorney (PofA), Jeffrey D. Moffat, Attorney-at-Law, subsequently advised the RO that a timely CDP had been filed. He also submitted Form 433A, *Collection*

---

[1] Additional amounts are owed for non-CDP/EH periods ending 12/31/1999 and 12/31/2004.

[ 1 ]

CDPLN&EHLV
TP: Robert & Vienna R. Leshin
SSN: _____ / _____

Settlement Officer: Laura Lisanti
Date:        July 25, 2006

*Information Statement for Wage–Earners and Self-Employed Individuals* to the RO, and the case was sent to Appeals for a hearing.

### DISCUSSION AND ANALYSIS

1.  <u>Verification of legal and procedural requirements.</u>

Assessment was made on the applicable Collection Due Process (CDP) notice periods as required by IRC § 6201.

Notice and demand for payment was mailed to the taxpayer's Last Known Address (LKA), within sixty (60) days of the assessment, as required by IRC § 6303.

<u>NFTL Filing Procedures</u>

Per IRM 5.12.2.3(1), the Service made reasonable attempts to contact the taxpayer prior to filing the NFTL.

Per IRM 5.12.2.5 the RO that requested the NFTL was graded GS–9 or higher.

Letter 3172, *Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC § 6320,* was issued via certified mail to the taxpayer's LKA no later than five (5) business days after the NFTL was mailed for recordation as per IRC 6320(a).

Form 12153, *Request for a CDP Hearing* (Form 12153) was timely received by the Service resulting in a timely request for a hearing under IRC § 6320, for period ending 12/31/2001.

Statutes have been correctly suspended for the CDP period.

<u>Pre–Levy Procedures</u>

There was a balance due when the CDP notice was issued as required by IRC § 6322 and IRC § 6331(a).

Letter 1058, *Notice of Intent to Levy and Your Right to a CDP Hearing,* was sent via Certified Mail return receipt requested, to the taxpayer's LKA, as required by IRC § 6330(a) and 6331(d) 12/13/2005.

2

CDPLN&EHLV
TP: Robert & Vienna R. Leshin                                    Settlement Officer: Laura Lisanti
SSN: ▮▮▮▮▮ / ▮▮▮▮▮                                         Date:          July 25, 2006

Form 12153 was untimely received by the Service on 01/17/2006. The envelope in which Form 12153 was mailed was postmarked 01/13/2006, also untimely. The taxpayers were granted an Equivalent Hearing (EH) for periods ending 12/31/2000, 12/31/2002 and 12/31/2003.

Statutes were incorrectly suspended for the EH periods, and Appeals requested Compliance correct this error.

As the Settlement Officer assigned to this case, I have had no involvement with these taxpayers or these tax periods prior to this hearing, nor do I have any knowledge of a pending Bankruptcy proceeding at the time the CDP notice was filed (11 USC 362(a)(6)).

2.    <u>Issues raised by the taxpayer.</u>

On an attachment to Form 12153 submitted by the PofA on behalf of the taxpayers, the PofA states the following in a paragraph labeled "FINDINGS TO WHICH THE TAXPAYER TAKES EXCEPTION":

- "The appropriateness of the collection actions. The logic behind this is that my client filed returns to get into compliance. Once these returns were completed, he advises that there may be an error since the amount of the filed return's net income doesn't seem to represent what he has saved. As such the recently filed returns may actually be a gross overstatement of amount due which needs to be modified at a later time.

- The possibility of alternative to enforced collection actions exists. Given that my client has [a] just filed these returns and been aware of the high tax due, he is not presently able to pay the amount in full. As such an OIC [offer-in-compromise] with payments may be a viable option for this client."

<u>ISSUE #1 - DISPUTE OF THE UNDERLYING LIABILITY</u>

The taxpayers did not dispute the underlying liability with Appeals at the §§6320 6330 hearing. Neither the correctness of the returns, nor the fact that amended returns may be appropriate for some or all of the balance due CDP/EH periods was ever discussed.

<u>ISSUE #2 - PROPOSED COLLECTION ALTERNATIVE - OFFER-IN-COMPROMISE (OIC)</u>

The taxpayers submitted a Doubt as to Collectibility OIC to the Centralized OIC Unit, which was subsequently forwarded to Appeals.

[ 3 ]

CDPLN&EHLV
TP: Robert & Vienna R. Leshin                                     Settlement Officer: Laura Lisanti
SSN: ▮▮▮▮ / ▮▮▮▮                                                  Date:              July 25, 2006

The taxpayers' offered $70,000 to compromise delinquent income taxes for periods 1999 – 2005[2].

Appeals reviewed the taxpayers' offer under both the DATC and Effective Tax Administration (ETA) provisions of §7122. The results of Appeals' analysis are contained on the OIC worksheet which is attached to this memorandum. Although the taxpayers' did not submit all information requested by Appeals, they submitted sufficient information for Appeals to determine that neither a DATC OIC nor an ETA OIC is a viable solution for this case. The taxpayers have the ability to fully pay the account in a number of ways, and doing so would not cause a Hardship as defined by §6343.

The taxpayers' PofA alternatively argued that given the outsourcing of collection accounts and the fees the Service will pay to the private collectors, the Service should accept any OIC that represents an offer of "at least .50 on the dollar." This may seem a cost–effective argument for acceptance, but Appeals found no guidance to suggest that offers should be considered or accepted on this basis.

- - -

No other issues were raised by the taxpayer or the PofA during the time the case was in Appeals.

3.    **Balancing the need for efficient collection with taxpayer concern that the collection action be no more intrusive than necessary.**

The taxpayers owe $225,115 in delinquent income taxes for tax periods 1999 through 2004.

The taxpayers' have sufficient assets (equity in their real property, and / or dissipated stock assets, and / or existing bank accounts and ongoing income) to fully pay their account and there are no Special Circumstances to consider.

Appeals offered the taxpayers a Short–Term–Agreement to Pay (a 90–day agreement), but they did not respond.

Appeals therefore finds that the filing of the NFTL and the proposed levy action balances the need for efficient collection of tax with taxpayer concern that collection action be no more intrusive than necessary.

---

[2] Tax year 2005 was not yet assessed.

⌐4⌐

CDPLN&EHLV
TP  Robert & Vienna R. Leshin

Settlement Officer:  Laura Lisanti
Date:          July 25, 2006

| | Taxpayer | Compliance | Appeals | |
|---|---|---|---|---|
| **Gross Monthly Income** | | | | |
| Wages (Taxpayer) | $ - | $ - | $ - | |
| Wages (Spouse) | $ - | $ - | $ - | |
| Other Income | $ 11,066.00 | $ - | $ 11,066.00 | Ave bank deposits to personal account |
| Rental Income | $ - | $ - | $ - | of Mrs. Leshin |
| Pension/SSA Income | $ - | $ - | $ - | |
| Business Income | $ - | $ - | $ - | |
| Total Income | $ 11,066.00 | $ - | $ 11,066.00 | |
| **Necessary Living Expenses** | | | | |
| Allowable National Expense | | | | |
| (Based upon gross Income) | | | | |
| 4 People | $ - | $ - | $ 916.00 | |
| **Local Housing & Utilities (Los Angeles)** | | | | |
| | $ 902.00 | $ - | $ 1,500.00 | |
| **Local Transportation** | | | | |
| Ownership Costs - Veh. 1 | $ 420.00 | $ - | $ 420.00 | |
| Ownership Costs - Veh. 2 | $ - | $ - | $ - | |
| Operating Costs | $ - | $ - | $ 426.00 | |
| **Other Allowable Expenses** | | | | |
| Health Care Premiums | $ - | $ - | $ - | |
| Health Care Expenses | $ - | $ - | $ 1,000.00 | |
| Taxes | $ - | $ - | $ 917.00 | |
| Life Insurance | $ 192.00 | $ - | $ 192.00 | |
| Court Ordered Payments | $ - | $ - | $ - | |
| Other Secured Debt | $ - | $ - | $ - | |
| Dependent Care | $ - | $ - | $ - | |
| State of California - FTB | $ 654.00 | $ - | $ - | |
| Total Expenses | $ 2,168.00 | $ - | $ 5,371.00 | |
| Income Available for to Pay Taxes | $ 8,918.00 | $ - | $ 5,716.00 | |
| Present Value of Future Income (PVFI) | $ 428,064.00 | $ - | $ 274,320.00 | |
| PVFI plus NRE (Minimum Acceptable Offer) | $ - | $ - | $ - | $ 1,292,263.00 |

| Asset | Fair Market Value | Quick Sale Value | Senior Encumbrances | Taxpayer Amount Available | Compliance Amount | Appeals Amount |
|---|---|---|---|---|---|---|
| Cash on Hand | $ 1,000.00 | $ 1,000.00 | $ - | $ 1,000.00 | $ - | $ 1,000.00 |
| Bank Accounts | $ 654.00 | $ 654.00 | $ - | $ 654.00 | $ - | $ 654.00 |
| Sav ings Account | $ - | $ - | $ - | $ - | $ - | $ - |
| Universal Life Policy | $ 2,524.00 | $ 2,524.00 | $ - | $ 2,524.00 | $ - | $ 2,524.00 |
| Trust Account | $ 169,231.00 | $ 169,231.00 | $ - | $ 169,231.00 | $ 169,231.00 | $ 169,231.00 |
| Stock & Bond Sales 1999 - 2006 | $ 586,797.00 | $ 586,797.00 | $ - | $ 586,797.00 | $ - | $ 586,797.00 |
| 2004 Chev Silverado | $ 18,569.00 | $ 14,847.20 | $ 16,372.00 | $ 18,569.00 | $ - | $ - |
| 9844 E. AVE s-12, Littlerock, Ca. 93543 | $ 381,000.00 | $ 324,900.00 | $ 67,163.00 | $ 182,637.00 | $ - | $ 257,737.00 |
| Net Realizable Equity (NRE) | | | | $ 374,805.00 | $ 169,231.00 | $ 1,017,943.00 |

